# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Ernesto D. Sigala,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>Arrow Financial Services, LLC, Rick Gonzalez, and David Fryer,<br><br>　　　　Defendants. | CASE NO. 05 CV 0074 (WMc)<br><br>**COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

　　　　The trial in the above-captioned matter was conducted on November 15, 2006, and November 16, 2006. Robert L. Hyde, Esq. and Joshua Swigart, Esq., of Hyde and Swigart, appeared as counsel for the Plaintiff Ernesto D. Sigala ('Sigala"); Melissa A. Blackburn, Esq., of Mulvaney, Kahan & Barry, appeared as counsel for the Defendants, Arrow Financial Services, LLC ("Arrow"), Rick Gonzalez ("Gonzalez"), and David Fryer ("Fryer").

　　　　Upon consideration of properly admitted testimony and evidence presented at trial and the arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law in support of its ruling. In the event and to the extent that a Finding of Fact is deemed to be a Conclusion of Law, it is adopted as such. Conversely, any Conclusion of Law deemed to be a Finding of Fact is adopted as such. Pursuant to the

Jointly Submitted Final Pre-Trial Conference Order executed by the parties, dated June 14, 2006 and submitted to the Court on that same date, (the "Pre-Trial Order"), the facts which were admitted therein are adopted and only the issues of fact and law designated to be litigated in the Pre-Trial Order, and no others, are the basis for this Court's ruling herein.

NOW, THEREFORE, the Court finds as follows:

## FINDINGS OF FACT

1.  Defendant Arrow is in the receivables management industry, and is a "debt collector" as that term is defined by the Federal Fair Debt Collection Practices Act ("FDCPA") and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). 15 U.S.C. § 1692a6; Cal. Civ. Code § 1788.2(d) (hereinafter collectively referred to as "the Acts").

2.  Defendants Gonzalez and Fryer were at all relevant times employed by Arrow. (Pre-Trial Order, at Section III, ¶ 10). Sigala was also, at one time, employed by Arrow. (Reporter's Transcript of Trial Proceeding, Volume 1, Page 5 ("RT1-5").

3.  At all relevant times, Arrow maintained specific procedures and training to ensure compliance with the FDCPA and RFDCPA. It was at all relevant times Arrow's policy not to call debtors at their places of employment when Arrow or its employees knew or reasonably should have known that the debtor's employer prohibited such calls at work. This was amply demonstrated by the testimony of several witnesses, including Sigala himself. Specifically:

    (a) Sigala testified as to Arrow's training and monitoring practices. (RT 1-6 to 1-8; RT1-40). Sigala also testified regarding Arrow's policy and procedures to prevent violating the law when it came to contacting debtors at their places of employment (RT1-21 [3-10]).

    (b) Gonzalez testified regarding the initial and ongoing training he received at Arrow, which included training in compliance with both the state and federal Fair Debt Collection Practices Acts, the monitoring by Arrow of its employees to

1  ensure ongoing compliance with the Acts, performance reviews, and regular seminars.
2  (RT1-128 to1-131).

3        (c)    Fryer testified that, at Arrow, he underwent training and received
4  updates, and was also required to undergo testing on various subjects of fair debt
5  practices about twice a year. (RT1-199 [16-22]).

6        (d)    Brian Cutler also summarized the training that Arrow's employees
7  undergo. (RT 2, 4). Cutler also testified that once a "hold" had been placed on a phone
8  number, the telephone dialing system would prevent that number from automatically
9  being dialed. (RT2 [112])

10     4.    Before the subject dispute arose, Sigala had substantial experience in the
11 debt collection industry and had substantial training in the Fair Debt Collection Practices
12 Act ("FDCPA"). (RT1,39 [16] - 40 [12] and 88 [6-8])

13     5.    While employed at Arrow, Sigala received negative performance reviews
14 for actions which he took in violation of Arrow's policies regarding proper debt collection.
15 (RT1, 9[1-21] and 40[22-25]). One negative review at Arrow involved the falsification of
16 documents. (RT 2, 10[5-9]). He was unhappy working at Arrow. (RT1,44 [4-17]).

17     6.    After leaving Arrow, Sigala was ultimately employed by the collection firm
18 of Patenaude & Felix. (RT1-10 [5-10]). While employed at Patenaude & Felix, Sigala
19 continued to receive training in federal and state collection laws. (RT1-11 [11-13]).

20     7.    On or about March 19, 2003 Sigala purchased an engagement ring for his
21 fiancé on credit. Sigala defaulted on his payment obligations under the credit account.
22 (RT1-47 [2-25]). The purchase by Sigala of the engagement ring gave rise to a
23 "consumer debt" as that term is defined by the FDCPA and the RFDCPA. 15 U.S.C. §
24 1692a(5); Cal. Civ. Code §1788.2(f). (Pre-Trial Order, Part III, ¶¶ 6-7.)

25     8.    The consumer debt for the engagement ring was assigned to Arrow for
26 collection. (Pre-Trial Order, at Section III, ¶ 4).

27     9.    Pursuant to the Pre-Trial Order, Sigala's only contention is whether two
28 out of the three telephone calls placed to him by Arrow's employees were made after

1 he informed the employees that his employer prohibited such communications.  See
2 Pre-Trial Order, at Section VI, ¶¶ 2-4.

3     10.    Neither the FDCPA nor the RFDCPA prohibit a debt collector from calling
4 a debtor at work unless the debt collector knows or reasonably should know that the
5 debtor's employer prohibits such calls.  15 U.S.C. § 1692c(a)(3); Cal. Civ. Code §
6 1788.17 (incorporating provisions of the Federal FDCPA).

7     11.    According to Sigala, his employer, Patenaude & Felix, did not enforce its
8 policy against personal phone calls so long as the calls were less than three minutes.
9 Each of the phone calls at issue in this case was less than three minutes.  (RT1-104).
10 In fact, both Sigala and a co-worker of his, Olga-Patel (Beth) Montoya, testified that they
11 did, in fact, receive personal phone calls at work.  (RT1-89 to 1-90; RT1-73).  This factor
12 alone is ground for finding in favor of Defendants.

13     12.    The Court also finds that, based on an examination of the testimony at
14 trial, Arrow's employees did not know or reasonably should have known that Sigala's
15 employer prohibited the calls until the last phone call which was made by defendant
16 David Fryer. Specifically, on November 22, 2004, Gonzalez, on behalf of Arrow,
17 contacted Sigala at his work for the purpose of discussing repayment of the debt.
18 Gonzalez testified at trial that his notations made after the telephone call terminated
19 stated:

20
21
22
> Called co-applicant at place of employment.  Spoke with customer.  Gave balance in full.  He said he couldn't talk.  He said he would call me back today after work.  He didn't want to disclose correct address or home phone.  Said will call me back today.

23 (RT1-136 [2-13]).
24 Gonzalez testified that he remembered this conversation with Sigala, which stood out in
25 Gonzalez's mind because Sigala was himself a collection agent and a former employee
26 of Arrow.  (RT1-145 [1-10]).  Gonzalez testified that the call ended mutually; if Sigala
27 had hung up on Gonzalez on that occasion, Gonzalez would have made a notation in
28 the file that Sigala had hung up on him, consistent with Arrow's policy and

4

requirement that its agents note all instances where a debtor hangs up the phone on the collection agent.  (RT1-174 [6-25]).

13. Sigala, on the other hand, testified that he told Gonzalez on this occasion not to call him at work, and hung up the phone. (RT1-16 to 1-17).  Even assuming that Sigala's version of the conversation was enough to impart sufficient knowledge to Gonzales that Sigala's employer allegedly prohibited such a call, the Court gives greater weight to Gonzalez's testimony for the following reasons:

(a) Sigala refused to give Gonzalez an alternative telephone number where Sigala could be reached.  It makes no sense for Sigala to take that position and also tell Gonzalez not to call him at work.  Sigala did not testify that he told Gonzalez not to communicate with him in any format or at any time.  In addition, Sigala told Gonzalez that he would call him back but failed to do so ever. As an experienced debt collection agent, Sigala had to have known that Gonzalez would call him back at work.

(b) Gonzalez prepared a written record of his conversation with Sigala after the phone call terminated. (RT1-135 [l6-25] to RT 1-136 [2-13]).  Gonzalez had no motivation to falsely record information pertaining to the substance of his conversation with Sigala.

(c) Sigala is an unreliable witness.  His testimony was impeached on at least three occasions during trial.  (See, e.g., RT1-41 to 1-43; RT1-43 to 1-46; RT1-46 to 1-47).

(d) Sigala admitted he was delinquent on other obligations he owed at around the same time that Gonzalez made his phone calls, such as his delinquent child support payments (RT1-48 to 1-53), student loan payments (RT1-53), a down-payment for an automobile (as evidenced by a collection letter dated October 21, 2004) (RT1-87).  Therefore, Sigala may have confused the calls from Arrow's employees with calls that may have been made by other creditors.  When Sigala was asked if he had received other communications from other creditors in November or December of 2004, Sigala was equivocal, saying, "I don't know. I don't think so." (RT1-56 [5-9]).

5

COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

Case No. 05 CV 0074 (WMc)

1     (e) Sigala was formerly employed by Arrow, but received negative
2 performance reviews there, and was unhappy working at Arrow.  (RT1-9 [11-21] RT1-44
3 [14-17]).
4   14. On November 30, 2004, Gonzalez called Sigala again.  Gonzalez testified
5 at trial that Sigala simply stated "I told you not to call me," and hung up the telephone
6 (RT1-190 [19-25]).  Gonzalez still had no reason to know whether Sigala's
7 employer may or may not prohibit receiving personal calls at work.  In fact, Gonzalez
8 testified that he believed that Sigala was confusing him with another debt collector,
9 given the substance of their first communication.  (RT1-140 to 1-141).
10   15. Sigala, on the other hand, only after some prompting, testified, *inter alia*:
11 "I believe I did tell him that, you know, I can't receive his calls.  I told you already not to
12 call me here at work, you know, he can get me in trouble, and I just remember hanging
13 up on him again." (RT1-22).  For many of the same reasons stated above, the Court
14 gives greater weight to Gonzalez's testimony.  In addition, it appears by Sigala's own
15 testimony that he cannot specifically recall what was said, as evidenced by his
16 qualifying statement that he "believes" he told Gonzalez that he could not receive calls
17 at work.
18   16. On December 29, 2004, Fryer, on Arrow's behalf, contacted Sigala at
19 work to discuss repayment of the account.  On that date, according to Fryer's testimony,
20 Sigala clearly told Fryer that he could not receive phone calls at work.  Fryer gave
21 Sigala his phone number and terminated the phone call.  Fryer also made a notation in
22 Arrow's records not to call Sigala at work, consistent with Arrow's policies and practices
23 in that regard.  (RT1-203).  Fryer testified that Sigala did not tell Fryer that Sigala had
24 told anyone else not to call him at work.  (RT1-204 [15-17]).  Fryer's conduct was
25 exemplary.
26   17. Olga Patel (Beth) Montoya, a witness for Sigala, testified in the affirmative
27 when asked whether she overheard Sigala tell someone on the phone "stop calling my
28 work."  (RT1-69 [13-16]).  Ms. Montoya also testified that when Sigala hung up the

6

1  phone, Sigala told her it was "Arrow Financial" calling (RT1-68 [1-8]).  (She also
2  specifically testified that she could not hear what the other party on the line said. (RT1-
3  65 [13] [18-21]).  However, Ms. Montoya did not recall the specific date of that call,
4  stating only that it was "around this time."  (RT1-68 [9-13]).  Therefore, the telephone
5  conversation referred to could have been Sigala's conversation with Fryer.

6        18. After Fryer's conversation with Sigala on December 29, 2004, no further
7  phone calls were made to Sigala at work.  (RT1-103 [6-15]).  Sixteen days later, on
8  January 14, 2005, Sigala filed the instant action against Arrow, Gonzalez and Fryer for
9  alleged violations of the FDCPA and RFDCPA.  Arrow never received written notice of
10 any alleged violation prior to the time Sigala filed his Complaint.  (Pre-Trial Order,
11 Section III, ¶ 9.)

12       19. While at Patenaude & Felix Sigala received several disciplinary write-ups
13 for tardiness and poor production and one disciplinary write-up for receiving a telephone
14 call at work from an apparent debt collector.  (RT1, 32[3] – 35 [22]).  The latter write-up
15 did not provide the identity of the apparent debt collector.  (Exh. 1)

16       20. Patenaude & Felix terminated Sigala because of his poor performance
17 and not for any other reason.   (RT1, 55 [16-21]).

18

19 **CONCLUSIONS OF LAW**

20       21.  The dispute between the parties is controlled by Federal Fair Dept
21 Collection Practices Act ("FDCPA"), 15 U.S.C. §§1692 - 1692o and California's
22 Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code §§1788
23 - 1788.33, hereinafter referred to collectively as "the Acts".

24       22. With certain exceptions set forth in California Civil Code §1788.17, the
25 RFDCPA incorporates the FDCPA.

26       23. In enacting the FDCPA, Congress intended to protect consumers from
27 "improper conduct" and illegitimate collection practices "without imposing unnecessary
28 restrictions on ethical debt collectors." <u>Clark v. Capital Credit & Collection</u>

1   Services, Inc., 460 F.3d at 1169-1170 citing S.Rep. No. 95-382, at 1 (1977), reprinted in
2   1977 U.S.C.C.A.N, 1695, 1696, 1698-99.  Indeed, the statutorily-stated purpose of the
3   FDCPA is to prevent "abusive, deceptive, and unfair debt collection practices."  15
4   U.S.C. § 1692(a).  For its part, California's RFDCPA provides that its purpose is to
5   "prohibit debt collectors from engaging in unfair or deceptive acts or practices in the
6   collection of consumer debts and to require debtors to act fairly in entering into and
7   honoring such debts…."  Cal. Civ. Code § 1788.1.

8       24.    Plaintiff has the burden of proving that Defendants violated the Acts.

9       25.    Neither the FDCPA nor the RFDCPA prohibit a debt collector from calling
10  a debtor numerous times, unless the debt collector calls at a time or place that the debt
11  collector knows, or should know, is inconvenient or unless the debtor indicates, *in*
12  *writing*, that he or she does not wish to be contacted further. A time is presumed to be
13  convenient if made between the hours of 8:00 a.m. and 9:00 p.m.), 15 U.S.C. §
14  1692c(a)(1) & (b).  Cal. Civ. Code § 1788.17 (incorporating provisions of the Federal
15  FDCPA).

16      26.    In the present case, Sigala does not contend that he ever gave Arrow with
17  any written notice (RT1-91 [11-15]), nor does he contend anywhere in the Pre-Trial
18  Order that the calls were made at any time other than between the hours of 8:00 a.m.
19  and 9:00 p.m.  See, Pre-Trial Order, Section VI, ¶¶ 2-4.

20      27.    Rather, Sigala contends that he instructed Gonzalez on November 22,
21  2004 and November 30, 2004, that he could not receive collection calls at his place of
22  employment.  Neither the FDCPA nor the RFDCPA prohibit a debt collector from calling
23  a debtor at work unless the debt collector knows or reasonably should know that the
24  debtor's employer prohibits such calls.  15 U.S.C. § 1692c(a)(3); Cal. Civ. Code §
25  1788.17 (incorporating provisions of the Federal FDCPA).

26      28.    As discussed supra, Sigala's employer, Patenaude & Felix, did not
27  enforce its policy against personal phone calls so long as the calls were less than three
28  minutes, and each one of the phone calls at issue in this case was less than three


minutes. Both Sigala and Olga Patel (Beth) Montoya, a co-worker, testified that they did, in fact, receive personal phone calls at work. Therefore, Sigala cannot prevail on his causes of action as a matter of law.

29. Furthermore, as discussed above, Sigala's testimony is not credible. The Court finds that Gonzalez's testimony regarding the substance of the parties' telephone conversation on November 22, 2004, is more credible for the reasons discussed above. Therefore, on November 22, 2004, Arrow and its employees did not know, and could not reasonably have known, whether or not Patenaude & Felix allegedly prohibited such calls.

30. The Court also finds that Gonzalez's testimony regarding the substance of the parties' telephone conversation on November 30, 2004, is more credible for the reasons discussed above. Therefore, on November 30, 2004, Arrow and its employees did not know and could not reasonably have known whether or not Patenaude & Felix allegedly prohibited such calls.

31. Plaintiff did not carry his burden of proof that Defendants violated the Acts as a result of the telephone calls of November 22, November 30 and December 29, 2004.

32. Plaintiff failed to establish by a preponderance of the evidence that the telephone call Olga Patel Beth Montoya overheard occurred on November 23, November 30 or December 29, 2004.

33. Plaintiff failed to establish by a preponderance of the evidence that the telephone call(s) which gave rise to Patenaude & Felix's written warning dated December 29, 2004 (Exh. 1) resulted from any of the three telephone calls from Defendants as opposed to calls from other creditors. Moreover, Fryer's telephone call of December 29, 2004, complied with the Acts.

Finally, both the FDCPA and the RFDCPA exempt debt collectors from liability for any damages if the debt collector shows by a preponderance of the evidence that the alleged violation was not intentional and resulted from a bona fide error

1  notwithstanding the maintenance of procedures reasonably adapted to avoid any such
2  error.  15 U.S.C. § 1692k(c); Cal. Civ. Code § 1788.30(e); <u>Clark v. Capital Credit &
3  Collection Services, Inc.</u>, 460 F.3d 1162, 1177 (9th Cir. 2006) (debt collector's false
4  representation need not be intentional to find a violation of Section 1692e, but debt
5  collector may nevertheless avoid liability through application of the bona fide error
6  defense).  <u>See</u> also <u>Lewis v. ACB Business Services, Inc.</u>, 135 F.3d 389, 401-402 (6th
7  Cir. 1998) (no liability existed where telephone call made to debtor after the debtor had
8  given notice not to call again, and after the debt collector had been notified that the
9  debtor was represented by counsel, since the call was a result of bona fide error where
10 the debtor's account was miscoded accidentally in the debt collector's computer).

11     34.    In the present case, Arrow established by a preponderance of the
12 evidence that it maintained specific procedures and training to ensure compliance with
13 the FDCPA and the RFDCPA.  Therefore, even if an error had occurred in Gonzalez's
14 failure to place on "hold" on Sigala's work phone number, there was sufficient testimony
15 from Gonzalez that his alleged failure to do so was unintentional and, furthermore, was
16 made notwithstanding the maintenance of policies, practices, and procedures by Arrow
17 reasonably adapted and intended to avoid such error.  Moreover, Fryer's conduct was
18 exemplary.

19     35.    Sigala's termination from Patenaude & Felix was unrelated to any activity
20 by Defendants.  (RT1, 55 [16-21]).

21     36.    Sigala did not carry his burden of proof that Defendants' activities caused
22 him to sustain legally cognizable injury (*e.g.,* personal humiliation, embarrassment,
23 mental anguish or emotional distress) under the Acts. *See Denis vs. New Horizon
24 Credit, Inc. 2006 WL 1965779 (D. Conn.), pg. 2*

25     37.    Plaintiff did not carry his burden of proof that Defendants' activities caused
26 him to sustain actual damages under the Acts.  *See Denis vs. New Horizon Credit, Inc.
27 2006 WL 1965779 (D. Conn.), pg. 2*.

28       Defendants are not liable to Sigala  in  any  amount  whatsoever,  including,

10
COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW                Case No. 05 CV 0074 (WMc)

1 but not limited to, costs and attorneys fees incurred in this matter.

2      38.     Judgment shall be entered in favor of the Defendants and against
3 Plaintiff.

4     IT IS SO ORDERED.

5 Dated:  February 22, 2007

6  

7                                  William McCurine, Jr.
                                 U.S. Magistrate Judge
8                                  United States District Court

11 AFS.121.159583.1